OPINION
Defendant-appellant Charles LeFlore appeals his conviction and sentence from the Richland County Court of Common Pleas on one count of domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree. Plaintiff-appellee is the State of Ohio. This case has been assigned to the accelerated docket.
 STATEMENT OF THE FACTS AND CASE
On February 10, 2000, the Richland County Grand Jury indicted appellant on one count of domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree. The indictment alleged that appellant had previously been convicted of domestic violence in Mansfield Municipal Court Case No. 92-CRB-3246 on February 2, 1993. At his arraignment on February 22, 2000, appellant entered a plea of not guilty to the charge of domestic violence. Subsequently, the following evidence was adduced at the trial in this matter, which commenced on May 25, 2000. On December 31, 1999, appellant and his wife, Christina, began arguing when Christina objected to appellant driving the couple's vehicle. At the time, appellant, who did not have a driver's license, was drunk. When Christina objected to appellant taking the vehicle, appellant yelled at Christina, told her to "shut the F up", and slammed back the recliner in which Christina was sitting, causing her to fall onto the floor. Trial Transcript at 136. As Christina was on the floor with her feet up in the air, appellant told her that he was going to show her how much he hated her. Appellant then proceeded to urinate on Christina's right shoulder. At trial, Christina testified that being urinated upon was "the most humiliating thing ever, ever had done in my life," Trial Transcript at 137. Christina then ran upstairs and began running her bath water. While Christina was in her bedroom preparing for her bath, appellant came up to her. After telling Christina that he hated her and was sick of her, appellant hit Christina three times behind her left ear with a closed fist while holding her hair. For a split second, Christina, who had painful bumps on her head, could "actually see like a light." Trial Transcript at 139. The couple's fourteen year old daughter then entered the room. After appellant's daughter pleaded with him to stop the beating, saying "[n]o more daddy", appellant told the girl to "[s]hut the F up." Trial transcript at 139. At trial, Christina testified that appellant then "swung at me again and she [the daughter] caught the hit." Trial Transcript at 139. After she was hit by appellant, the couple's daughter was curled up on the floor, crying. Appellant and her daughter later drove to the domestic violence shelter in Wooster, Ohio, where they stayed for about six days. After appellant advised Christina's mother that he was leaving the couple's house, Christina and her daughter returned home. Approximately a day and a half after they returned home, appellant showed up and told Christina that she "was a stupid, fat, white bitch" and that, if she left with the car, he would "stick a potato in the gas tank." Trial Transcript at 145. When asked whether appellant had threatened her regarding the December 31, 1999, incident, Christina responded that appellant told her "to keep my mouth shut" or he "was going to F me up." Trial Transcript at 145. Christina and her daughter then left and went to a domestic violence shelter in New Philadelphia. At trial, appellant stipulated to a prior domestic violence conviction in Mansfield Municipal Case No. 92-CRB-3246. At the conclusion of the evidence and the end of deliberations, the jury, on May 26, 2000, found appellant guilty of domestic violence. The jury, in the verdict form, further found that appellee had proved that appellant previously was convicted of domestic violence. Thereafter, on June 1, 2000, the trial court sentenced appellant to 12 months in prison. The trial court, in its June 1, 2000, Sentencing Entry, indicated that it was imposing the maximum sentence because it found, pursuant to R.C. 2929.14(C), that appellant had committed the worst form of the offense and that appellant posed the greatest likelihood of recidivism. It is from his conviction and sentence that appellant now prosecutes his appeal, raising the following assignment of error:
 UNDER THE MANDATES OF R.C. 2929.12, 2929.13 AND 2929.14, THE MAXIMUM SENTENCE IMPOSED BY THE TRIAL COURT IS NOT SUPPORTED BY THE RECORD AND IS THEREFORE CONTRARY TO LAW.
 I
Appellant, in his sole assignment of error, argues that the record in the case sub judice does not support the trial court's imposition of a maximum sentence on appellant and that such sentence is, therefore, contrary to law. As a preliminary matter, we note that we no longer review sentencing under an abuse of discretion standard. After 1995 Senate Bill 2, an appellate court's review of an appeal from a sentence was modified. R.C. 2953.08 provides, in pertinent part: "(G)(1) The court hearing an appeal of a sentence * * * may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds any of the following
 (a) That the record does not support the sentence,. . . (d) That the sentence is otherwise contrary to law.
Accordingly, we review the sentence under the new guidelines." State v. Boyd (Sept. 27, 1999), Stark App. No. 1999CA00045, unreported. A court may impose the longest sentence authorized only upon offenders who committed "the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders . . . and upon certain repeat violent offenders . . ." R.C.2929.14(C). Since appellant was convicted of one count of domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree, appellant was subject to a minimum prison term of six months and a maximum term of one year. Appellant was sentenced to the maximum prison term of one year. As is stated above, the trial court, in the case sub judice, stated as follows in the June 1, 2000, Sentencing Entry: "The court is IMPOSING THE MAXIMUM PRISON TERM because the court finds pursuant to R.C. 2929.14(C) that the defendant. . . . has committed the worst form of this offense " and "poses the greatest likelihood of recidivism." While a recitation of the statutory criteria alone may be enough to justify more than the minimum sentence, it is not enough to justify the imposition of the maximum sentence. The trial court also must provide its reasons. That is because of R.C. 2929.19(B)(2)(d) which provides, "[t]he court . . . shall make a finding that gives its reasons for selecting the sentence imposed. . . . [i]f the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code . . ." In addition, the trial court must consider any relevant factors and all factors set forth in R.C. 2929.12 which are applicable when determining if the offender committed the worst forms of the offense or poses the greatest likelihood of committing future crimes. Accordingly, we must turn to the sentencing hearing to determine if the trial court stated its reasons (supporting the statutory criteria findings made in its typed judgment entry) for imposing the maximum sentence. "In the absence of any reasons given, either orally or written, for imposing the maximum sentence, we find the matter must be remanded for resentencing." State v. Garcia (1998), 126 Ohio App.3d 485, 488. We find that the statements made by the trial court at the sentencing hearing support the trial court's findings that appellant poses the greatest likelihood to reoffend and that appellant committed the worst form of the offense. At the sentencing hearing, the trial court made the following comments: The Court: Well, Mr. Leflore, you were offered an opportunity at the beginning of this case to admit your guilt and go into a community corrections program we have designed for domestic violence people. That's obviously your problem. You have had three of those in the past.
Instead, you have chosen to put forth all of these lies; it didn't happen and accuse your daughters. None of the jurors believed you, and I didn't believe you. Your story doesn't stack up, and what they said had the ring of truth.
Again, you got exactly what you deserved. You live in a dream world. You talk yourself into thinking you haven't done this, when you have a history of violence, and when you have got an alcohol problem. And when you drink, you become another person according to everyone who knows you. And when they testified, they say the same things about; you're a mean drunk. And the problem with that is you do these things and get yourself in trouble. Then you try to persuade yourself and everybody else through the letter writing campaign they didn't happen.
I have had a chance to look at your record. I know you shot and killed a man in Youngstown, and apparently through good lawyering or something, that got classified as negligent homicide and felonious assault. And I see you have had a number of convictions for domestic violence, not nearly as many as there have been in denials, but three priors. And now here's the latest in a string, and I hear what you do in this case, which is probably the ultimate indignity; knock your wife over and urinate on her, a person you took vows to love and cherish.
The Defendant: It never happened.
 The Court: I know it has to do with the alcohol you drink. You have had the chance to put your story before the jury, they had a chance to hear your story, and they're not believing it.
These things will happen until you quit denying it. And you keep on drinking saying you don't have an alcohol problem, and you're going to be coming back again and again. Because domestic violence, as you know, is a felony. It subjects you to being sent to prison. Because of your denials and lies, the chances of turning your life around or trying to do something about your alcohol problem, which you deny, are nil.
Your chances of recidivism are as high as anybody I have ever seen in domestic violence. Not only do you physically attack your wife, that's about the worst form of the offense, I have read all of your letters carefully. They just don't make sense and your denials don't make sense.
This happened and you know it happened. If you don't know it happened, it's because you were too drunk. You've got to get past the alcohol, otherwise you'll have us running your life. You've got to deal with the alcohol problem and deal with your violence problem. Then you won't have people interfering with your life, and you won't have to do all the letter writing campaigns.
I have to sentence you to 12 months. . . .
Transcript of Sentencing Hearing at 3-6.
We find that the trial court provided sufficient reasons supporting its findings that appellant, based upon his prior history of domestic violence and alcohol abuse, poses the greatest likelihood of reoffending and that appellant, by urinating on his wife after assaulting her, committed the worst forms of the offense. Since the trial court's findings are sufficient to support the trial court's imposition of a maximum sentence under R.C. 2929.14(C), we find that the imposition of the maximum sentence on appellant was not error. Appellant's sole assignment of error is , therefore, overruled.
The judgment of the Richland County Court of Common Pleas is affirmed.
Edwards, J. Gwin, P.J. and Farmer, J. concur